**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**COURT FILE NO.: 16-cv-1966 (SRN/KMM)**

| | |
|---|---|
| Tamara Jax,<br><br>                    Plaintiff,<br>v.<br><br>loanDepot.com, LLC,<br><br>                    Defendant. | **AMENDED COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

For her complaint against loanDepot.com ("Defendant"), Tamara Jax ("Plaintiff") states and alleges as follows based on her personal knowledge, on investigations of counsel, and on information and belief:

## INTRODUCTION

1.     This is a lawsuit to recover damages arising from Defendant's impermissible access of Plaintiff's credit reports in violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681b(f).

## PARTIES

2.     Plaintiff is a natural person residing in the State of Minnesota, County of Mower.

3.     Defendant is a limited liability company organized under the laws of the State of Delaware and maintaining its chief executive offices in the State of California.

4.     Defendant is a "person" as defined by 15 U.S.C. § 1681a(b).

1

## JURISDICTION AND VENUE

5.      Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

6.      Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2) because the credit report inquiries at issue were made in the context of a series of mail and telephone communications between Plaintiff and Defendant about Defendant potentially financing Plaintiff's purchase of her home in Minnesota.

7.      This Court has personal jurisdiction over Defendant because Defendant maintains a Minnesota mortgage loan originator license, maintains a registered agent in Minnesota for service of process, and communicated by phone and mail with Plaintiff in Minnesota about a potential loan against her home in Minnesota.

## FACTUAL ALLEGATIONS

8.      Plaintiff is buying her home in Mower County on a contract for deed (the "contract").

9.      Plaintiff wishes to move to mortgage financing for her home by offering a first position lien to a traditional lender in exchange for a loan to pay off the contract.

10.     In 2014, she approached Defendant about a loan for this purpose.

11.     Defendant is a nationwide mortgage originator licensed in all fifty states.

12.     Plaintiff communicated with Defendant by telephone and mail from Minnesota about a potential loan.

13.     Defendant advised Plaintiff in 2014 that she was denied for failing to meet its credit rating standards.

14.     In 2015, Plaintiff and Defendant connected again.

15.   Initially, Defendant told Plaintiff she was denied.

16.   Then, Defendant wrote a loan for Plaintiff based on a credit rating score of 582.

17.   Defendant mailed the loan paperwork to Plaintiff at her home in Minnesota.

18.   Before the paperwork could be signed and recorded and the loan funded, Defendant rescinded the offer and advised Plaintiff it had made a mistake.

19.   In March of 2016, Plaintiff took a more active interest in her credit so that she could evaluate whether and how she might be able to improve her standing for a mortgage loan.

20.   Plaintiff discovered that Defendant had made twelve (12) "hard" inquires of her consumer credit file to each of the major consumer reporting agencies, Experian, Equifax, and TransUnion.

21.   A "hard inquiry" is a credit reporting industry designation meant to indicate that the fact of the inquiry itself will count as a negative factor against the consumer in credit scoring models.

22.   Typically, only applications for new credit and the associated credit inquiries are classified and scored as "hard inquiries."

23.   As credit scoring experts view it, the more often a consumer applies for credit, the more desperate the consumer appears, and desperation does not reflect well on creditworthiness.

24.   Over one ten (10) day period in March 2015, Defendant made five (5) hard inquiries of Plaintiff's consumer credit information.

25.   Plaintiff did not apply for a loan from Defendant twelve times in two years, and she did not apply for a loan five times in ten days.

26.   Plaintiff did not give Defendant express permission to make continuous requests for her credit reports.

27.   On information and belief, Defendant made repeated requests for Plaintiff's consumer reports outside the permission impliedly or expressly granted by Plaintiff's two loan applications.

28.   Upon learning of Defendant's repeated inquiries in March 2016, Plaintiff compiled and reviewed credit advice and analysis from creditkarma.com.

29.   From creditkarma.com, Plaintiff learned that the high number of credit inquiries made by Defendant had dramatically lowered her credit rating.

30.   Plaintiff consulted with local lenders about their credit rating standards for mortgages.

31.   Plaintiff learned that she would not be able to qualify for a loan with her credit rating as it stands after Defendant's repeated hard inquiries.

32.   Plaintiff called Defendant numerous times between March and April 2016 to dispute the high number of hard inquiries Defendant made of her credit files.

33.   Plaintiff talked with representatives of Defendant who gave her various responses; the common refrain was that someone would look into it and follow up with her.

34.   As of the commencement of this lawsuit in June 2016, Defendant had failed to explain the twelve inquiries to Plaintiff or advise the consumer reporting agencies that the inquiries were excessive and should be reduced.

35.   In fact, Defendant's repeated inquiries were submitted with willful and reckless disregard for Plaintiff's rights under the FCRA.

4

36.     Defendant and its agents treat consumers as "leads" whom Defendants then screen under minimum credit rating standards in order to sell them to upstream brokers and lenders.

37.     Defendant obtains multiple consumer reports on each lead, but Defendant failed to adopt or adhere to policies to ensure (1) consumers were apprised of Defendant's practice of obtaining multiple consumer reports per contact; (2) consumers had not already failed Defendant's initial screening in recent hours, days, or weeks; (3) Defendant had not learned of a condition that prevented the consumer from becoming a borrower, regardless of credit rating; or (4) Defendant's agents did not zealously attempt to re-screen consumers who had already failed the initial screen and did not initiate a subsequent contact with Defendant.  Defendant's policy and practice failures resulted in Defendant's repeated acquisitions of Plaintiffs' consumer credit reports and further harm to her credit rating, in willful and reckless disregard for the FCRA. Plaintiff suffers continuing and ongoing harm to due to the negative effect Defendant's actions have had on her credit rating.

38.     Plaintiff has suffered from stress, anxiety, and depression over her inaccurately deflated credit rating and inability to obtain a mortgage loan to pay off the contract.

## TRIAL BY JURY

39.     Plaintiff is entitled to and hereby demands a trial by jury pursuant to the Seventh Amendment to the Constitution and Federal Rule of Civil Procedure 38(b).

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

40.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

41.    The foregoing acts and omissions of Defendant constituted numerous and multiple violations of the FCRA, including, but not limited to, 15 U.S.C. § 1681b(f).

42.    As the direct and proximate result of Defendant's violations of the FCRA, Plaintiff has suffered mental and emotional distress and damage to her credit rating and credit opportunities.

43.    Defendant willfully and recklessly failed to adhere to the permissible purpose limitations of 15 U.S.C. § 1681b(f).

44.    In the alternative, Defendant negligently failed to adhere to the permissible purpose limitations of 15 U.S.C. § 1681b(f).

45.    Plaintiff is entitled to recover from Defendant compensatory damages, statutory damages, punitive damages, and attorney's fees and expenses pursuant to 15 U.S.C. §§ 1681n and 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that a judgment and order be entered against Defendant as follows:

- awarding Plaintiff compensatory damages in an amount to be determined by a jury;
- awarding Plaintiff statutory damages of $1,000 as provided by the FCRA;
- awarding Plaintiff punitive damages as provided by the FCRA, in an amount to be determined by a jury;

6

- awarding Plaintiff reasonable costs and attorney's fees as provided by the FCRA; and
- for such other and further relief as may be just and proper.

Dated this 8th day of June, 2017.          Respectfully submitted,

By: <u>s/Thomas J. Lyons Jr.</u>
Thomas J. Lyons, Jr. (MN#249646)
**CONSUMER JUSTICE CENTER P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile:  (651) 704-0907
tommy@consumerjusticecenter.com

*Attorney for Plaintiff*

7